UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID COTTO, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-66-JD-JEM |
| JACK HENDRIX, et al., | |
| Defendants. | |

OPINION AND ORDER

David Cotto, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 7.) He responded to this order (ECF 8), and the docket reflects that the fee has now been received. (ECF 9.) Therefore, the case will proceed to screening.

Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Cotto is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Cotto is an inmate at Pendleton Correctional Facility ("Pendleton"). His claims stem from events that occurred while he was incarcerated in the Westville Control Unit ("WCU"). He claims to be a "documented Seriously Mental Ill (SMI) inmate," a classification used by Indiana Department of Correction ("IDOC") to delineate inmates with chronic mental health conditions, although he does not detail the nature of his condition. He claims that in May 2024, he was transferred from Miami Correctional Facility ("Miami") to administrative segregation at WCU. He claims the transfer was based on a recommendation by Ryder Stoff, Director of the Internal Affairs Department at Miami, and was approved by IDOC Executive Director of Classification Jack Hendrix and Deputy Director Bill Wilson. He claims he was not given a reason for the transfer.

He wrote numerous letters and filed multiple classification appeals but he remained at WCU. He also asked several staff members at WCU why he was there, including Director Mapps (first name unknown) of the prison's Internal Affairs Department, Unit Team Manager Tracy Cornett, Case Manager K. Dougherty-Shepard, and K. Watts, who appears to be in charge of classification appeals. They were not helpful. He also wrote letters to Warden Jason Smiley asking to be moved, but he remained in segregation. He claims that he cut himself and engaged in other types of self-harm in WCU, and told Manager Cornett and Manager Dougherty-Shepard what he was doing. They allegedly responded in a rude and dismissive fashion that they were not responsible for providing mental health treatment. After approximately eight months, he was transferred to Pendleton. Based on these events, he sues the defendants for monetary damages.

The Fourteenth Amendment Due Process Clause does not create a liberty interest in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). As to the conditions, it is not enough that they are "more severe than those found in the general prison population." *Hardaway*, 734 at 744. Instead, they must be in the vein of depriving a prisoner of "all human contact or sensory stimuli." *Id.*

Cotto was at WCU for approximately eight months, which is somewhat lengthy. However, he does not describe any restrictive conditions at WCU for the court to plausibly infer that he was subjected to a significant and atypical hardship in relation to the ordinary incidents of prison life. *Id.* at 743 (several months in segregation did not trigger a liberty interest "in the absence of exceptionally harsh conditions"). The mere fact that he was moved to segregation is not enough to trigger a liberty interest. *Wilkinson*, 545 U.S. at 222; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("putting a few words on paper that, in the hands of an imaginative reader, *might*

3

suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim).

Aside from this problem, the demands of due process are not onerous in this context, and inmates are only entitled to "some informal, nonadverserial" process in connection with their detention in long-term segregation. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review procedures "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686 (citation omitted). In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Cotto appears to believe he should have been given a hearing before his transfer, similar to in a disciplinary proceeding, but this was not a right he was entitled to under applicable law. *See Westefer*, 682 F.3d at 684-85. It is also evident from his complaint that he was provided a reason for his placement. He attaches documentation reflecting that the decision to transfer him to a segregation unit was based on the fact that he had committed seven disciplinary offenses since his arrival at IDOC a year earlier, including an incident where he was found in an unauthorized area. (ECF 1-1 at 1.) It was noted that officials believed "[a]dditional observation [is] needed." (*Id.*) It can also be

4

discerned that he was given an opportunity to voice his views on the matter through classification appeals and other filings. He attaches documentation reflecting that Executive Director Hendrix responded to his classification appeals explaining that his views were considered, but it was determined that his placement was appropriate based on his conduct in prison. (ECF 1-1 at 10-11.)

He also received reviews of his placement on a monthly basis. (*See* ECF 1 at 5; ECF 1-1 at 2-13.) That is not the type of infrequency that would violate due process. *Compare Felton v. Brown*, 129 F.4th 999, 1009 (7th Cir. 2025) (17-month gap between reviews of inmate's placement would be unconstitutional). Cotto states that the review forms gave no reason for his placement, but the reports he attaches to his complaint indicate that officials felt his continued detention at WCU was warranted based on his conduct history and the need for observation. (*See* ECF 1-1 at 2-13.) He may disagree with that reasoning, but his disagreement does not provide a basis for a due process claim. He may also be claiming that the reviews violated prison policy, including those related to inmates with an "SMI" designation, but violations of prison policy are not actionable under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). The court cannot plausibly infer from his allegations that he was denied the minimal requirements of due process in connection with his placement.

The court considers that he claims to have suffered mental health problems while at WCU, resulting in alleged acts of self-harm. A lack of mental health care is more

appropriately analyzed in the context of the Eighth Amendment, rather than within a Fourteenth Amendment claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (constitutional claims must be analyzed under the most "explicit textual source of constitutional protection"); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmates are entitled to adequate medical care under the Eighth Amendment); *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021) (Eighth Amendment encompasses the right to appropriate measures to address the risk of self-harm). Indeed, public records reflect that Cotto is already proceeding on an Eighth Amendment claim related to his mental health treatment and acts of self-harm at WCU. *See Cotto v. Reagle, et al.*, No. 3:24-CV-921-CCB-SJF (N.D. Ind. filed Nov. 12, 2024).

The rude comments he claims Manager Cornett and Manager Dougherty-Shepard made about his mental health problems—telling him his acts of self-harm "couldn't have been serious" because he was "still alive" and that they were not "fucking head doctors"— do not give rise to a constitutional claim. *See Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 445 (7th Cir. 2009) (verbal harassment, "while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."). These comments may have been unprofessional, but "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners." *Lisle*, 933 F.3d at 719. Verbal harassment may be actionable if it involves "a credible threat to kill, or to inflict any other physical injury," *Dobbey*, 574 F.3d at 446, but the comments Cotto describes do not come anywhere near that category.

Therefore, the complaint does not state a claim for relief. "[L]itigants in this circuit are ordinarily given the chance to amend their pleadings once as a matter of course" before a case is dismissed. *Newson v. Superior Ct. of Pima Cnty.*, 784 F. App'x 964, 965 (7th Cir. 2019); *see also Luevano v. Wal-Mart*, 722 F.3d 1014, 1022 (7th Cir. 2013). Cotto may file an amended complaint if he believes he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made under penalty of perjury.

For these reasons, the court:

(1) GRANTS the plaintiff until **July 11, 2025**, to file an amended complaint; and

(2) CAUTIONS him that if he does not file an amended complaint, this case is subject to dismissal under 28 U.S.C. § 1915A because the current complaint does not state a claim for relief.

SO ORDERED on June 11, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT