UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID COTTO,<br><br>Plaintiff,<br><br>v.<br><br>JACK HENDRIX, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-66-JD-JEM |

OPINION AND ORDER

David Cotto, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 11.) The court determined that his original complaint did not state a plausible constitutional claim, but he was granted an opportunity to file an amended complaint before the case was dismissed under 28 U.S.C. § 1915A. (ECF 5.) He responded with the present pleading.

Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Cotto is proceeding without

counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Cotto is currently an inmate at Pendleton Correctional Facility ("Pendleton"). In May 2024, he was transferred from Miami Correctional Facility ("Miami") to long-term segregation at the Westville Control Unit ("WCU") based on a recommendation by the internal affairs department at Miami. He claims he was not given a reason for the transfer. He wrote numerous letters and filed multiple classification appeals but he remained at WCU for approximately eight months before being transferred to Pendleton.

The Fourteenth Amendment Due Process Clause does not create a liberty interest in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019).

Cotto describes restrictive conditions at WCU he endured for eight months. This includes being alone in his cell "24/7," and being unable to socialize with other inmates, attend church, participate in any programs, or order commissary items.

Whenever he left his cell, he had to wear a "dog leash" around his neck and shackles on his hands and feet. The court finds that he has plausibly alleged restrictive conditions that triggered a liberty interest.

The demands of due process are not onerous in this context, and inmates are only entitled to "some informal, nonadverserial" process in connection with their detention in long-term segregation. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review procedures "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686 (citation omitted). In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Cotto appears to believe he should have been given a full hearing to decide whether his transfer was appropriate, similar to a prison disciplinary proceeding. However, that was not a right he was entitled to under applicable law. *See Westefer*, 682 F.3d at 684-85. It is also evident from his filings that he was provided a reason for his placement. Documents reflect that the decision to transfer him to WCU was based on his commission of seven disciplinary offenses during his first year at the Indiana Department of Correction ("IDOC"), including an incident where he was found to be in

3

an unauthorized area of the prison.[1] (ECF 1-1 at 1.) Because of his conduct, officials concluded that close observation was needed. (*Id.*) It can also be discerned that Cotto was given an opportunity to voice his views on the matter through classification appeals and other filings. Two IDOC officials responded to his classification appeals and letters explaining that his views were considered, but it was determined that his placement was appropriate. (ECF 11 at 5; ECF 1-1 at 10-11.)

He also received reviews of his placement on a monthly basis while at WCU. (*See* ECF 11 at 6-7; ECF 1-1 at 2-13.) That is not the type of infrequency that would violate due process. *Compare Felton v. Brown*, 129 F.4th 999, 1009 (7th Cir. 2025) (17-month gap between reviews of inmate's placement would be unconstitutional). Cotto believes the review process was perfunctory, but the reports of these reviews show he was told the reason for his continued detention: his conduct history and the need for close observation. (*See* ECF 1-1 at 2-13.) He may disagree with that reasoning, but his disagreement does not provide a basis for a due process claim. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). He also claims that the review procedures did not comply with prison policies, but violations of prison policy are not actionable under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). The court cannot

---

[1] Cotto submitted these documents with his original complaint but omitted them from the amended complaint. The court nevertheless takes judicial notice of the previously filed documents. *See* Fed. R. Evid. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

plausibly infer from his allegations that he was denied the minimal requirements of due process in connection with his detention at WCU.

He also asserts that he suffered mental health problems while at WCU. Such allegations are more appropriately analyzed in the context of the Eighth Amendment, rather than within a Fourteenth Amendment claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (constitutional claims must be analyzed under the most "explicit textual source of constitutional protection"); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmates are entitled to adequate medical care under the Eighth Amendment). In fact, public records reflect that Cotto is proceeding on an Eighth Amendment claim related to his mental health treatment at WCU in a separate lawsuit.[2] *See Cotto v. Reagle, et al.*, No. 3:24-CV-921-CCB-SJF (N.D. Ind. filed Nov. 12, 2024).

Finally, Cotto describes dirty conditions at WCU upon his arrival. Specifically, he claims that his cell walls were smeared with blood, feces, and other bodily fluids of prior occupants, and he had no running water or a properly functioning toilet for approximately four months. He claims he complained to Captain Rippe (first name unknown), Caseworker K. Doughtery-Shepard, and Unit Team Manager Tracy Cornett about these conditions, but they did nothing to help him, instead telling him "they don't care" or "this is not the Hilton." (ECF 11 at 4.)

---

[2] The court notes that Cotto is also pursuing a third lawsuit in which he claims he did not receive proper mental health treatment at Miami, and that staff at Miami violated his constitutional rights by subjecting him to unnecessary strip searches. *See Cotto v. English, et al.*, No. 3:24-CV-972-JD-JEM (N.D. Ind. filed Dec. 9, 2024).

His allegations about unsanitary conditions are most appropriately analyzed under the Eighth Amendment. *Graham*, 490 U.S. at 395. In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the deprivation is serious enough that it amounts to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate shelter and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). This includes the right "not to be forced to live surrounded by their own and others' excrement." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). On the subjective prong, the prisoner must allege the defendant acted with deliberate indifference to his health or safety. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Giving Cotto the inferences to which he is entitled, he satisfies the objective prong in connection with his claim about the unsanitary conditions in his cell. *See Hardeman*, 933 F.3d at 820. On the objective prong, he claims that he specifically asked Captain Rippe, Caseworker Doughtery-Shepard, and Manager Cornett for help remedying these conditions, but they brushed off his concerns. He has alleged enough

6

to proceed further against these defendants under the Eighth Amendment. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Captain Rippe (first name unknown), Caseworker K. Doughtery-Shepard, and Unit Team Manager Tracy Cornett in their personal capacity for monetary damages for deliberate indifference to the dirty conditions in his cell in the Westville Control Unit in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Jack Hendrix, Bill Wilson, Ryder Stoff, Jason Smiley, Mapps, and K. Watts as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Captain Rippe (first name unknown), Caseworker K. Doughtery-Shepard, and Unit Team Manager Tracy Cornett at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 11) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) ORDERS Captain Rippe (first name unknown), Caseworker K. Doughtery-Shepard, and Unit Team Manager Tracy Cornett to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 22, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT